IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DARNELL QUEEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21CV323 |
| | ) | |
| K.A. DIETRICH, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, a pretrial detainee housed in the Guilford County Jail, submitted a pro se complaint under 42 U.S.C. § 1983 and requests permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). Plaintiff names as Defendants several police officers in Greensboro, North Carolina, as well as persons or entities associated with the towing of his van. Plaintiff also filed a Motion to Amend [Doc. #3] containing proposed amendments and exhibits. Given that Plaintiff has a right to amend once as of right under Fed. R. Civ. P 15(a), the Court will grant that Motion to Amend and will consider the proposed amendments and exhibits together with the original allegations.

Because Plaintiff is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," this Court has an obligation to "review" this Complaint. 28 U.S.C. § 1915A(a). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if [it] – (1) is frivolous, malicious, or fails to state a claim

upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

Applicable here, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b)(1), when the complaint does not "contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

For the reasons that follow, the Complaint should be dismissed pursuant to 28 U.S.C. § 1915A(b) because it fails to state a claim on which relief may be granted.

The Complaint alleges that on August 31, 2020, Plaintiff's vehicle, a 2003 Mazda MPV van, was lawfully parked at 2509 Immanuel Road in Greensboro, which is Plaintiff's

---

[1] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

2

mother's residence. (Complaint at 16.)² The Complaint alleges that at 10:27 that morning, the van was in a "taped off secured homicide scene" and was unlawfully seized by officers at the scene. Specifically, the Complaint alleges that the "vehicle was already in a secured homicide scene, when [Defendant] Det. Dietrich allegedly thought a Rachet Driver set (with a brand name on box) was a 'Glock' firearm box (another box with brand and company logo on box)." (Id.) Then, "[i]nstead of using 'Probable Cause' to search 'the box' in the vehicle, Det. Dietrich decided to seize [the] vehicle, depriving [the] owner of his property." (Id.) Defendant Dietrich had the van towed and stored for three or four days before searching the van after applying for and receiving a search warrant. (Id. at 16-17.)

Based primarily on those allegations, the Complaint purports to raise claims against several Defendants, with the first being Defendant Dietrich. The Complaint claims that Defendant Dietrich illegally seized and searched Plaintiff's property. However, the Complaint states that Defendant Dietrich had probable cause to search Plaintiff's van at the homicide scene. Plaintiff's assertion appears to be that Defendant Dietrich could have searched his van then and there but was constitutionally prohibited from seizing it and searching it later. If so, this is incorrect and fails to state any claim for relief. See United States v. Johns, 469 U.S. 478, 484 (1985) (finding no violation of vehicle owners' rights where probable cause allowed for a warrantless search but the search occurred three days after cars were moved to a law enforcement facility because "[t]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure");

---

² All page citations refer to the page numbers listed in the footer displayed on the documents in this Court's electronic case filing database.

3

Chambers v. Maroney, 399 U.S. 42, 52 (1970) (stating that probable cause to search a car allows it to be immobilized/secured). The Complaint also asserts that the warrant Defendant Dietrich later obtained was defective, but the validity of the warrant is irrelevant given the continued existence of probable cause to search the van. See Johns, 469 U.S. at 484; Michigan v. Thomas, 458 U.S. 259, 261 (1982) ("[T]he justification to conduct such a warrantless search does not vanish once the car has been immobilized."); Florida v. Meyers, 466 U.S. 380 (1984). Therefore, the original Complaint does not state any claim for relief against Defendant Dietrich.

The Complaint fails even more clearly against the other listed Defendants. As to Defendant Officer H. Jefferson, it alleges only that she maintained the chain of custody by following the tow truck that towed the van. Plaintiff claims that Defendant Jefferson somehow "should have known" that this would violate Defendants rights. (Complaint at 17.) As just noted, the Complaint does not set out a viable claim that Defendant Dietrich violated Plaintiff's rights by towing and searching the van. Therefore, Defendant Jefferson following the van could not violate Plaintiff's rights either. Further, even if Defendant Dietrich's actions did somehow violate Plaintiff's rights, the Complaint contains no facts demonstrating that Defendant Jefferson actually knew of or participated in the violation. The Complaint is the exact type of "the-defendant-unlawfully-harmed-me accusation" that fails to state any claim for relief.

As for Defendant P. Caffey, the Complaint asserts only that he helped Defendant Dietrich search the van pursuant to the search warrant. (Id.) It contains no facts supporting a conclusion that Defendant Caffey knew of any alleged problem with the warrant or the

4

search generally. Therefore, the Complaint fails to state any possible claim as to Defendant Caffey.

Next, the Complaint names Defendants Corporal Detective D. J. Benotti, Assistant Managing Detective S.D. Brown, and Detective S.L. Kilmer as Defendants because they were experienced officers who "[k]new or should have known, that their conscious failure to intervene or provide adequate information on how to go about 'searching' [the] van, would result in [a] deprivation of [Plaintiff's] rights." (Id. at 18.) It also faults them for inaction despite knowledge that their subordinates were violating Plaintiff's rights. The Complaint fails to include any facts regarding these Defendants' knowledge of or role in the events underlying the Complaint. Therefore, in addition to failing because any claims would be derivative of the failed claims against Defendant Dietrich, the claims against these Defendants also fail for being entirely conclusory.

Finally, the Complaint names the tow truck driver who towed Plaintiff's van, Steve Kahn, his employer, Regional Auto Towing Center, and their insurance and bonding companies as Defendants based simply on the fact that Defendant Kahn towed Plaintiff's van at Defendant Dietrich's behest. These Defendants are private parties, not state or government employees. Generally speaking, only state actors, not private parties, can be named as Defendants under § 1983. See Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001). Private parties can sometimes be treated as state actors where their actions are equivalent to action by the state. Id. Specifically as to towing companies in similar situations, a plaintiff must demonstrate that the tow operator and towing company agreed or conspired to violate Plaintiff's rights. Talib v. Nicholas, No. CV 14-05871, 2015 WL

5

456546, at *6 (C.D. Ca. Feb. 2, 2015) (unpublished). As discussed above, the Complaint fails to show that any violation of Plaintiff's rights occurred, and contains no facts to allege that Defendant Kahn or his company knew of any violation and agreed to participate in it. Merely towing vehicles at the request of law enforcement officials is not sufficient for liability under § 1983. Ferguson v. Dunn, Civil Action No. 1:16-CV-272, 2017 WL 3020931, at *1 (E.D. Tex. July 17, 2017) (unpublished). Therefore, the Complaint fails to state any claim for relief against these Defendants.

Plaintiff's Amended Complaint is more detailed as to the police Defendants.[3] However, it does not ultimately fix or avoid the problems described above. Regarding Defendant Dietrich, the Amended Complaint adds allegations regarding his securing of the search warrant for Petitioner's van, and Plaintiff claims that Defendant Dietrich made false statements in the application for the warrant. (Amended Complaint at 2-5.) However, as set out previously, Defendant Dietrich already had probable cause to search Plaintiff's van without a warrant. In fact, exhibits attached to the Amended Complaint further support the existence of probable cause in that officers on the scene of the homicide investigation discovered a gunshot victim in the front seat of a Buick that was in the front yard of 2509 Immanuel Road, that the Buick had run over the chain link fence on the northeast side of the property, that Plaintiff's van was one or two car lengths away with a missing bumper and damage from an apparent crash, that Plaintiff was in the area when the shooting

---

[3] The Amended Complaint adds the name of the tow company's bonding company. However, it adds no new factual allegations as to any of the Defendants associated with the tow company and, therefore, does not remedy the defects of the initial Complaint.

6

occurred, that Plaintiff accessed the van shortly after the shooting, that Plaintiff then left the scene, and that officers observed what appeared to be a Glock brand pistol case through the windows of the van. (Id. Exs. A, C, D.)[4]

As to Defendants Benotti, Brown, and Jefferson, the Amended Complaint alleges that they knew Plaintiff had an expectation of privacy in his mother's house and that when Defendant Dietrich communicated his plans to seize Plaintiff's van without a warrant, they did not advise him of this fact. As already explained, Defendant Dietrich did not violate Plaintiff's rights by seizing the van from the street where it was parked. Therefore, any advising or not advising by these Defendants also could not have violated Plaintiff's rights and the Amended Complaint does not state any claim for relief against them based on the seizure of the van. The Complaint further adds that Defendants Benotti and Jefferson made incorrect or false statements of fact in police reports because Defendant Jefferson stated that Plaintiff moved his van while police were beginning their homicide investigation but did not include the reason that he moved it, which was to allow emergency services access to the area. (Id. at 3.) Plaintiff alleges that they made these statements in order to help Defendant Dietrich fabricate probable cause for a search warrant. Plaintiff is not constitutionally entitled to have every arguably relevant fact placed into police reports or to have those reports written in a manner of his choosing. Further, the Complaint is entirely

---

[4] Plaintiff primarily seeks to dispute portions of the warrant application and police reports reflecting that video footage from a nearby gas station shows Plaintiff in an altercation with the victim prior to the shooting. Plaintiff also challenges the assertion by officers that he is the individual seen in another video removing a firearm from his waistband as the victim drives by in the Buick prior to the shooting. To the extent Plaintiff is in essence seeking to challenge the evidence being used against him in the state court criminal prosecution, those are matters for the state court not for the present proceeding.

7

conclusory in its assertion that these Defendants somehow knowingly conspired or cooperated with Defendant Dietrich in any way while writing their reports. Moreover, as discussed above, the Complaint reflects that probable cause supported the seizure and subsequent search regardless of the warrant.

Finally, as to Defendant Caffrey, the Amended Complaint alleges that he was a supervisor and that he should have known that Defendant Dietrich's warrant was invalid because it did not state the items to be seized. This allegation fails to state a claim for multiple reasons. First, Caffrey cannot be named simply because he is a supervisor because theories of *respondeat superior* or liability predicated solely on a defendant's identity as a supervisor do not form a basis for a claim under § 1983. Iqbal, 556 U.S. at 677. There is no allegation that he had actual knowledge of the warrant or any problems with it before Defendant Dietrich obtained it. Second, for the reasons previously stated, Plaintiff cannot base any claim on the warrant. Finally, Plaintiff attached the warrant to his Amended Complaint. (Amended Complaint, Ex. F.) Attachment A to the warrant clearly states the nature of objects to be seized. Therefore, the alleged problem that Defendant Caffrey should have corrected does not exist. The Amended Complaint does not state any claim as to Defendant Caffrey.

As a result, this action should be dismissed and Plaintiff's request to proceed *in forma pauperis* should not be authorized, with the exception that *in forma pauperis* status shall be granted for the sole purpose of entering this Order and Recommendation.

8

Case 1:21-cv-00323-WO-JEP    Document 5    Filed 07/14/22    Page 8 of 9

Plaintiff has submitted the Complaint for filing, however, and, notwithstanding the preceding determination, § 1915(b)(1) requires that he make an initial payment of $13.33. Failure to comply with this Order will lead to dismissal of the Complaint.

IT IS THEREFORE ORDERED that *in forma pauperis* status be granted for the sole purpose of entering this Order and Recommendation.

IT IS FURTHER ORDERED that within twenty (20) days from the date of this Order Plaintiff make an initial filing fee payment of $13.33.

IT IS FURTHER ORDERED that Plaintiff's trust officer shall be directed to pay to the Clerk of this Court 20% of all deposits to his account starting with the month of July of 2022, and thereafter each time that the amount in the account exceeds $10.00 until the $350.00 filing fee has been paid.

IT IS RECOMMENDED that this action be dismissed pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted.

This, the 14th day of July, 2022.

                                                           /s/ Joi Elizabeth Peake
                                                    United States Magistrate Judge